DISSENT

Sherri B. Sullivan, P.J.
Without a doubt, the procedural aspects of this case are unusual. So too is the judgment of the motion court, which is 83 pages in length and considers issues not raised in the amended post-conviction motion. There is, however, nothing particularly unusual about the trial conducted in this case, nor the law governing the prosecution of child molestation cases and claims of ineffective assistance of counsel. Because I find Movant has failed to demonstrate either prong of the Strickland analysis, I respectfully dissent.

Performance

The first issue to be resolved is whether the motion court- found Trial Counsel ineffective for failing to “thoroughly” investigate the school records by not obtaining a copy of the records or found Trial Counsel ineffective for conducting no investigation at all into these records. These two separate and distinct alleged omissions were squarely before the motion court. After combing through the motion court’s judgment, the majority concludes the motion court found Trial Counsel had undertaken no investigation at all into the school records.
*250 While the’ motion court found Trial Counsel lacked credibility, the court never explicitly found that Trial Counsel failed to undertake any investigation at all. The motion court did, however, make explicit findings that Trial Counsel’s informal investigation and failure to obtain the records were unreasonable. Even if it could be said the motion court found Trial Counsel made no investigation into the school records at all, Movant' has still failed to demonstrate that he received ineffective assistance of counsel.
Trial Counsel testified he made an informal inquiry regarding the school attendance records and ultimately concluded the records would not aid the defense theory that Movant was not the perpetrator and, therefore, Victim’s presence at school on October 3 was insignificant. The relevant question is whether Trial Counsel’s failure to obtain the records indicating Victim’s attendance at school on October 3, 2005 or, in the alternative, Counsel’s failuré to inquire into the records at all, can be considered a reasonable investigation or a reasonable decision rendering that particular investigation unnecessary. See Barton v. State, 432 S.W.3d 741, 759 (Mo. banc 2014) (“counsel has a duty to make reasonable investigations or to make a reasonable decision that makes’ particular investigations unnecessary”). If Trial Counsel’s informal inquiry revealed Victim was at school on the alleged date of occurrence, consistent with the actual records, and-Counsel chose not to obtain the records based ón a strategic decision to pursue an alternative defense, such decision would be “virtually unchallengeable.” Barton, 432 S.W.3d at 749, quoting Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (“‘[Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable!)]’ ”).
In this case, the defense’s strategy at trial was not to deny Victim had been abused but to argue Movant was not the perpetrator. Movant admitted he frequented Mother’s house but asserted he stopped going by the house in August 2005 after getting into an argument with Mother. The defense also suggested the assailant was another man also named Nate who frequented the neighborhood, was familiar with the children, and matched Victim and Sister’s physical description of the perpetrator to the extent police included the “other” Nate’s photograph in a photo array presented to the children. While neither the motion court nor thé majority expressly doubt the reasonableness of the strategy employed, both ultimately find Trial Counsel was required to investigate and utilize the school attendance, records to impeach Victim and Sister in order to provide effective representation. Contrary to the assertions otherwise, this amounts to second-guessing Counsel’s trial strategy.
Again,' “ ‘strategic choices made after thorough investigation of law and facts relevant to plausible options are -virtually unchallengeable!)]’ ” Barton, 432 S.W.3d at 749, quoting Strickland, 466 U.S. at 690, 104 S.Ct. 2052. In rendering their conclusions, the motion court and majority opinion fail to adequately consider the prevailing precedent regarding the prosecution of child molestation cases.
“Time is not essential in child sexual abuse cases because it can be impossible to ascertain specific dates of the sexual abuse.” State v. Miller, 372 S.W.3d 455, 464 (Mo. banc 2012). Missouri courts have held that allegations 'of abuse having occurred during times ranging from a 24-day period to a span of four and one-half years were sufficient for notice and due process purposes. Id. at 465.
*251 Furthermore, as we recognized in Mov-ant’s direct appeal, it is firmly established in the law that “in cases dealing with very sensitive subjects, it is common for the testimony of a victim of tender years to contain' some variations, contradictions or lapses in memory.” State v. Hannon, 398 S.W.3d 108, 115 (Mo.App.E.D.2013), quoting State v. Sanien, 337 S.W.3d 72, 77 (Mo.App.W.D.2011). See also State v. Kelley, 945 S.W.2d 611, 615 (Mo.App.S.D.1997).
“Inconsistencies or contradictions in statements by a young child relating a sexual experience do not, by themselves, deprive the testimony of all probative" force.” State v. Mattic, 84 S.W.3d 161, 169 (Mo.App.W.D.2002), J.M.G. v. Juvenile Officer, 304 S.W.3d 193, 196 (Mo.App.W.D.2009).
In light of the fact that the State charged Movant with acts occurring “on or about October 3, 2005,” and the clear legal precedent that time is not essential in child sexual abuse cases and that variations, contradictions, and lapses in memory of child witnesses are generally accepted, Trial Counsel’s decision not to investigate or to obtain the school records was not unreasonable, trial strategy. Victim was 8 years old at the- time of the offense, 11 years old when he first revealed the abuse, and 13 years old at the time of trial. Sister was 10 years old at the time of the offense and 15 years old at the time of trial. The evidence at trial was that Mother was a drug addict who was frequently “high,” people came to the home to sell and use drugs, Mother frequently left the children alone for periods of. time, and Movant visited the home daily. The point of reference for the children regarding the date of the assault was that the assault occurred the day before they had to call for help after discovering their Mother overdosed on heroin and were subsequently removed from their home. It was reasonable trial strategy for Trial Counsel to have chosen a defense strategy based upon on Victim’s honest mistake in ■ identifying his abuser which did not require Counsel to attack the credibility of the young, sympathetic witnesses, on what is largely a legally insignificant collateral detail.

Prejudice

With regard to prejudice, the motion court and the majority find- Movant demonstrated a reasonable probability that the outcome of. the trial would have been different, but for Trial Counsel’s failure to investigate Victim’s school attendance, records. In doing so? both place undue significance on the fact, that the State presented evidence,and argument that the assault occurred on October 3, 2005. The motion court found impeaching Victim and Sister with the school records would have forced the State to completely restructure its case and there was “simply no way to know for sure whether or not the prosecution could have convinced a jury beyond a reasonable doubt the [Movant] was guilty.” The majority opinion contends the State’s evidence was time-specific and goes so far as to say the evidence established “the molestation only could have occurred on October 3,2005.”
This position fails to adequately recognize the firmly established legal principles that time is not essential in child abuse cases and it is common for there to be variations, contradictions, or lapses of memory in the testimony of a victim of tender years. Instead, both courts assert this evidence with the potential to reveal the faulty memory of an eight-year-old victim and his ten-year-old sibling as to the singular detail of whether Victim was home sick on the day of . the assault five years after the fact would be so devastating to the prosecution’s case that it undermines confidence in the outcome of Mov-ant’s trial.
*252 Although analyzed under a slightly different standard, this Court’s opinion in Movant’s direct appeal succinctly sets forth why the motion court’s and the majority’s reasoning is faulty:
Even if we assume the attendance records are credible, they are not reasonably sufficient to raise a substantial doubt in a reasonable person’s mind as to the result of a new trial. The school records would merely demonstrate that [Victim] incorrectly recalled being absent from school on October 3, 2(305. The fact that [Victim] was at school that day does not exclude the possibility that [Movant] committed the offenses before or after school that day or another day that was “on or about October 3, 2005.” Mother testified that prior to her heroin overdose, she left her children unattended for periods of time and got “high” every day. [Victim] testified that “when [he] came home at night, [he] came home sometimes by [himself].” According to the testimony of Mother and [Victim], [Movant] visited their house every day or every other day until the date of the incident. Although [Movant] denied going to their home after his August 2005 argument with Mother, he admitted that before the argument he went there “a whole lot” to acquire and use heroin and that “sometimes [he] wouldn’t go down there maybe for a day.”
State v. Hannon, 398 S.W.3d 108, 114 (Mo.App.E.D.2013). It unclear why these facts and the underlying rationale are no longer compelling. Today, as it was at the time of Movant’s direct appeal, it is simply of no moment whether the assault occurred during the school day on October 3, or before or after school on October 3, or on another day that was “on or about October 3, 2005.”
In support of its opinion, the majority compares the case mb judiee to Smith v. State, 370 S.W.3d 883 (Mo. banc 2012), characterizing it as “virtually indistinguishable.” Smith involved counsel’s failure to interview and potentially call as a witness the man who had previously pled guilty to the crime and who was alleged to be Smith’s accomplice. Id. at 885. During post-conviction proceedings, it was revealed that Smith’s alleged accomplice would have testified favorably for Smith, testifying Smith was not involved in the crime. Id. This testimony was exculpatory evidence going directly to whether Smith was guilty of the crime and could have provided Smith a complete defense to the charges. Exculpatory evidence is “[e]vidence tending to establish a criminal defendant’s innocence.” Black’s Law Dictionary 637 (9 th ed. 2009). The instant case involves the alleged failure to investigate and utilize impeachment evidence, “[ejvidence used to undermine a witness’s credibility.” Id. “ ‘The failure to impeach a witness will not constitute ineffective assistance of counsel unless such action would have provided a viable defense or changed the outcome of the trial.’ ” Woods v. State, 458 S.W.3d 352, 366-67 (Mo.App.W.D.2014), quoting Thompson v. State, 437 S.W.3d 253, 263 (Mo.App.W.D.2014). The school records would have served only to impeach Victim’s and Sister’s testimony that Victim was home sick on October 3, 2005. In no way do the school records provide a complete defense or establish Movant’s innocence to the charge of first-degree statutory sodomy.
Although not explicitly stated, implicit in both the motion court’s judgment and the majority opinion is a finding that Trial Counsel not only had to “investigate” the school attendance records, but also was required to obtain said records and to utilize those records to impeach Victim and-Sister. To be clear, the underlying premise of these rulings is that anything other *253 than this specific attack on the credibility of the child witnesses was unreasonable trial strategy resulting in prejudice.
Because I am left with a definite and firm impression that the motion court findings and conclusions are in error, I would reverse the motion court’s judgment granting Movant post-conviction relief. Movant has failed to demonstrate Trial Counsel’s performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney or that there is a reasonable probability that, but for Counsel’s performance, the outcome of the proceeding would have been different.